UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:20-cv-00618-FDW-DSC

| | |
|---|---|
| WILLIAM CLINTON BUNDY, JR., and BUNDY GROUP, LLC, )<br>)<br>Plaintiffs, )<br>)<br>vs. )<br>)<br>CITYSWITCH II, LLC, ROBERT G. RAVILLE, STEPHEN E. RAVILLE, and CITYSWITCH II-A, LLC )<br>)<br>Defendants. ) | ORDER |

THIS MATTER is before the Court on Defendants CitySwitch II, LLC, CitySwitch II-A, LLC, Robert G. Raville, and Stephen E. Raville's Motion to Dismiss for lack of personal jurisdiction and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6). (Doc. No. 30). The motion is ripe for review. After carefully reviewing the briefing submitted by the parties, and for the reasons stated herein, the Court DENIES Defendants' Motion to Dismiss. (Doc. No. 30).

## I. BACKGROUND

Plaintiffs William Clinton Bundy, Jr. ("Bundy") and Bundy Group, LLC ("Bundy Group") filed their Amended Complaint asserting claims against Defendants CitySwitch II, LLC, CitySwitch II-A, LLC, Robert G. Raville, and Stephen E. Raville (collectively, "the Ravilles") to recover damages for alleged services that Plaintiffs provided to Defendants. Id. at p. 1.[1]

---

[1] The background below is derived from the Amended Complaint, exhibits attached to the Amended Complaint, and the affidavits and exhibits submitted regarding the existence of personal jurisdiction.

1

Bundy Group is a North Carolina limited liability company that provides investment banking services and is located in Charlotte, North Carolina. Id. at p. 2. Bundy is the owner and managing director of Bundy Group and leads its Charlotte office. Id. Robert Raville is a citizen and resident of Georgia and is CitySwitch II's President and CEO. (Doc. No. 31, pp. 1, 3). Stephen Raville is Robert Raville's father and a citizen and resident of Florida. (Doc. No. 32, p. 1). Plaintiffs allege that while Stephen Raville does not hold an executive position at CitySwitch II, he provides substantial assistance and input into the decisions of the company and acted with apparent authority to bind CitySwitch II. (Doc. No. 26, p. 3). CitySwitch II and CitySwitch II-A are both Georgia limited liability companies with their principal offices located in Atlanta, Georgia. (Doc. No. 31, pp. 1–2). Plaintiffs allege both CitySwitch entities are managed by the same leadership team, principally by both Robert Raville and Stephen Raville, and refer to the two companies collectively as "CitySwitch" throughout the Amended Complaint as if they were the same entity. (Doc. No. 26, pp. 2–3).

Plaintiffs allege that on August 16, 2017, Robert Raville called his college acquaintance and friend Bundy, who was at his office in Charlotte, North Carolina, in order to seek Bundy's professional advice and services. (Doc. No. 26, p. 3). During the phone call, Robert Raville allegedly told Bundy that CitySwitch was attempting to raise capital so it could qualify to enter and perform a contract with AT&T. Id. at p. 4. According to the Amended Complaint, the AT&T contract was contingent on CitySwitch obtaining a funding commitment of at least $200,000,000 to $300,000,000 over several years. Id. During that call, Robert Raville requested Bundy's assistance to locate a capital partner to provide the necessary funding for CitySwitch if CitySwitch was unable to secure a capital partner on its own. Id. After the call ended, Robert Raville allegedly

2

sent Bundy financial information and financial models to help facilitate Bundy's efforts to locate a capital partner for CitySwitch. Id. at 5. Plaintiffs allege Bundy then began to identify potential capital partners. Id.

On September 21, 2017, Robert Raville again initiated contact with Bundy, informed Bundy that CitySwitch had failed to secure a capital partner, and indicated CitySwitch wanted Bundy provide services to help raise the necessary capital. Id. According to Plaintiffs, Robert Raville indicated during the call that the deadline for qualifying the AT&T project was looming and time was of the essence for CitySwitch to find a capital partner. Id. at p. 6. Bundy then informed Robert Raville that because of the time constraints, Bundy was willing to begin working to find a capital partner without first formalizing a written agreement with CitySwitch. Id.

After the September 21 phone call, Bundy states he identified American Infrastructure MLP Fund II, L.P. ("AIM") as a potential capital partner for CitySwitch. Id. at p. 7. Plaintiffs allege that on September 27, Bundy coordinated and participated in a telephone conference between CitySwitch and AIM to discuss the investment opportunity. Id. While AIM expressed significant interest in investing with CitySwitch, Bundy allegedly continued to work on finding a capital partner for CitySwitch. Id.

According to the Amended Complaint, Bundy emailed an outline of his proposed terms and compensation for his services to CitySwitch—through Robert Raville—on October 2, 2017. (Id. at p. 8; Doc. No. 26-1). Plaintiffs allege on October 10, 2017, the Ravilles and Bundy discussed Bundy's proposed terms of engagement during a phone call. (Doc. No. 26, p. 8). Plaintiffs allege during the call, the Ravilles acknowledged Bundy's expectation of payment for his services but represented that CitySwitch would not finalize an engagement letter with Bundy until after it

3

received a signed Letter of Intent from AIM. Id. at pp. 8–9. The Amended Complaint contends the Ravilles suggested CitySwitch was amenable to Bundy's proposed terms of engagement and compensation, and Bundy continued to advise CitySwitch regarding the potential deal with AIM and finding other potential capital partners. Id. at p. 9.

Plaintiffs state that on October 16, 2017, AIM presented a Letter of Intent to CitySwitch. Id. Thereafter, Bundy emailed CitySwitch a draft of a formal engagement letter based upon the terms outlined in his previous email and discussions with the Ravilles about his compensation. Id.; (Doc. No. 26-2). Plaintiffs allege Bundy's engagement letter was a typical model of compensation in the investment banking industry: Bundy would be compensated through a mix of cash consideration and equity in CitySwitch based upon the amount of capital provided by AIM to CitySwitch over several years. (Doc. No. 26, p. 10). Plaintiffs allege that according to Robert Raville's statements about the deal between CitySwitch and AIM, Bundy's anticipated compensation under the engagement letter ranged from $5,200,000 to $7,800,000. Id.

Plaintiffs allege that while CitySwitch was delaying the execution of an engagement letter, it continued to seek investment banking advice from Bundy—including how CitySwitch should respond to AIM's Letter of Intent. Id. Plaintiffs allege that on October 20, 2017, CitySwitch executed a revised Letter of Intent with AIM for the capital investment, to which CitySwitch II-A was a signatory. Id. Plaintiffs also allege after the Letter of Intent was executed between CitySwitch and AIM, Bundy was deliberately cut out from any communications regarding the investment deal between the companies. Id. at p. 11.

The Amended Complaint alleges between October 2017 and early December 2017, Bundy made numerous requests to the Ravilles to finalize the formal terms of engagement for his services.

4

Id. Plaintiffs allege Stephen Raville assumed the primary role in these discussions, and during a telephone call on November 2, 2017, Stephen Raville proposed an alternative to Bundy's original terms of engagement and emailed Bundy the summarized terms of his proposal the next day. Id at p. 12; (Doc. No. 26-3). Plaintiffs further allege Stephen Raville's email communication represented on behalf of CitySwitch that Bundy could expect to be paid around $2 million over a six-year period. (Doc. No. 26, p. 12).

Plaintiffs allege on or about December 7, 2017, Stephen Raville indicated CitySwitch and AIM were meeting on December 12 and that CitySwitch would resolve Bundy's engagement at that time. Id. at p. 13. Plaintiffs allege Bundy Group did not hear back from CitySwitch or the Ravilles after December 7. Id. Plaintiffs then allege that it in February 2018, Stephen Raville informed Bundy during a telephone call that the Ravilles were prepared to offer Bundy a one-time payment of $100,000. Id. Plaintiffs allege the $100,000 offer was not market value or consistent with the terms CitySwitch had previously recognized as appropriate compensation, and Bundy rejected the offer. Id.

According to the Amended Complaint, neither CitySwitch nor the Ravilles have compensated Bundy or the Bundy group for various services and advice they provided in the development of the CitySwitch/AIM financial relationship. Id. Consequently, Plaintiffs filed this action against CitySwitch II, CitySwitch II-A, and the Ravilles asserting claims of: (1) Unjust Enrichment; (2) Fraud; (3) Negligent Misrepresentation; and (4) violations of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"). Id. at pp. 15–22. Defendants now move to dismiss Plaintiffs' Amended Complaint for lack of personal jurisdiction and failure to state a claim. (Doc. No. 30).

## II. STANDARD OF REVIEW

### A. Fed. R. Civ. P. 12(b)(2)

Rule 12(b)(2) provides for dismissal for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). Under Rule 12(b)(2), the defendant is required to affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage. Grayson v. Anderson, 816 F.3d 262, 267 (4th Cir. 2016) (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). "[W]hen the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." Grayson, 816 F.3d at 268 (citing Combs, 886 F.2d at 676). Although the court may consider affidavits submitted by both parties, factual disputes and all reasonable inferences must be made in favor of the party asserting jurisdiction. White v. Aetna Life Ins. Co., No. 3:20-CV-204-MOC-DSC, 2021 WL 467210, at *2 (W.D.N.C. Feb. 9, 2021).

There are two types of personal jurisdiction that can be established: general jurisdiction or specific jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 nn. 8 & 9 (1984). A court may exercise general personal jurisdiction over a defendant when that defendant is essentially "at home" in the forum. See Daimler AG v. Bauman, 571 U.S. 117, 127 (2014). For a corporate (or other entity) defendant, "at home" will usually mean their domicile and their principal place of business. See id. at 137. When general personal jurisdiction does not apply, a court may still exercise specific personal jurisdiction if the plaintiff makes a sufficient showing: 1) the defendant purposefully availed themselves of the forum and the benefits and protections of

6

its laws, 2) the plaintiff's claim arises from the purposefully availing conduct, and 3) the exercise of jurisdiction would be constitutionally reasonable. See Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009).

### B. Fed. R. Civ. P. 12(b)(6)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court assumes "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." Eastern Shore Markets, 213 F.3d at 180. Additionally, a court "accept[s] as true all well-plead allegations and view[s] the complaint in the light most favorable to the plaintiff." Sec. of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007).

A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 697 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and conclusory allegations are "not entitled to be assumed true." Id. at 681. While a high level of factual detail is not required, a complaint needs more than

7

"an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Twombly, 550 U.S. at 555).

### III. ANALYSIS

#### A. Personal Jurisdiction

Defendants contend this Court does not have personal jurisdiction over them in this action. Here, there is no need for extensive analysis of general personal jurisdiction. Plaintiffs do not allege any Defendant is a resident of or has its principal place of business in North Carolina. General jurisdiction therefore does not apply. See Daimler AG, 571 U.S. at 127.

Turning to specific jurisdiction, for a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. Bowman v. Curt G. Joa, Inc., 361 F.2d 706, 711 (4th Cir. 1966). North Carolina's long-arm statute has historically been construed to be coextensive with the Due Process Clause, collapsing the statutory and constitutional requirements into a single inquiry over personal jurisdiction. See Christian Sci. Bd. Of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). This single inquiry hinges on the defendant having "minimum contacts" with the forum state, such that exercising jurisdiction does not offend "traditional notions of fair play and substantial justice." See id. (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). The appropriateness of exercising personal jurisdiction is a fact specific inquiry, to be determined based on the circumstances of each case. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478–79, 485–86 (1985).

8

A minimum contacts analysis requires a court to consider "(1) the extent to which the defendant 'purposefully avail[ed]' itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002).

To establish purposeful availment in the first prong of the minimum contacts analysis, a plaintiff must show the defendant deliberately reached out beyond its home and its contacts were not "random, isolated, or fortuitous." See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 141 S. Ct. 1017, 1024–25 (2021) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770 (1984)). When evaluating purposeful availment, the Fourth Circuit has identified several nonexclusive factors to consider, including:

> (1) whether the defendant maintained offices or agents in the State;
> (2) whether the defendant maintained property in the State;
> (3) whether the defendant reached into the State to solicit or initiate business;
> (4) whether the defendant deliberately engaged in significant or long-term business activities in the State;
> (5) whether a choice of law clause selects the law of the State;
> (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship;
> (7) whether the relevant contracts required performance of duties in the State; and
> (8) the nature, quality, and extent of the parties' communications about the business being transacted.

Sneha Media & Entm't, LLC v. Associated Broad. Co. P, 911 F.3d 192, 198–99 (4th Cir. 2018).

The second requirement in a minimum contacts analysis is that a plaintiff's claim "must arise out of or relate to the defendant's contacts" with the forum. Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty., 137 S. Ct. 1773, 1780 (2017). In other words, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or

9

Case 3:20-cv-00618-FDW-DSC   Document 35   Filed 09/10/21   Page 9 of 16

an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Id. (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).

In the third prong of the analysis, the exercise of jurisdiction over the defendant must be reasonable and fair. Asahi Metal Indus. Co. v. Super. Ct. of Cal., 480 U.S. 102, 113 (1987). The Supreme Court has outlined five factors to consider when determining whether the exercise of personal jurisdiction would be reasonable and fair: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5), the shared interest of the several States in furthering fundamental substantive social policies. Id. The Court now addresses whether the exercise of personal jurisdiction over each Defendant is proper.

### 1. Robert Raville

Here, Plaintiffs contend Robert Raville purposefully availed himself to the jurisdiction of North Carolina by reaching out into the State to solicit services from Plaintiffs. A defendant who initiates contacts with an entity in North Carolina with some expectation of contract negotiations can be evidence of purposeful availment. See Vishay Intertechnology, Inc. v. Delta Int'l Corp., 696 F.2d 1062, 1068 (4th Cir. 1982) (holding defendant who wrote three letters and initiated five telephone calls to plaintiff purposefully availed themselves to jurisdiction under N. C. Gen. Stat. § 1–75.4(4)(a)). Plaintiffs allege Robert Raville initiated phone calls with Bundy at his Charlotte office to request his assistance with locating a capital partner for CitySwitch. (Doc. No. 26, pp. 3, 5). Plaintiffs also allege Robert Raville and Bundy engaged in multiple communications—including telephone calls and emails—over the course of several months relating to the capital partner search, CitySwitch/AIM partnership, and Bundy's potential compensation. Id. at 5–11.

10

Accordingly, Robert Raville purposefully availed himself of the privilege of conducting activities in North Carolina.

The second factor considers the extent to which Plaintiffs' claims arise out of Robert Raville's activities directed at North Carolina. Bristol-Myers Squibb, 137 S. Ct. at 1780. Plaintiffs' causes of action hinge on Robert Raville's communications and representations that allegedly induced Bundy to perform services for which he was not compensated. Thus, Plaintiffs' claims under North Carolina state law arise out of Robert Raville's multiple contacts directed at North Carolina.

Finally, the third factor is the extent that exercise of personal jurisdiction is constitutionally reasonable. Asahi Metal Indus., 480 U.S. at 113. First, Robert Raville would be minimally burdened by litigating the issues in North Carolina because he has allegedly had continuous contact and engagement with the forum state during the formation of the CitySwitch/AIM partnership. See SC Advisors 7, LLC v. Rudnick, No. 3:19-CV-00716, 2020 WL 4227469, at *4 (W.D.N.C. July 23, 2020). Further, North Carolina has a strong interest in adjudicating the issues: Plaintiffs are North Carolina residents, seek relief under the North Carolina unfair trade practices statute, and assert claims arising out of services provided in North Carolina after being solicited by Robert Raville. See Vishay, 696 F.2d at 1069.

Taking these factors into account, the exercise of specific personal jurisdiction on Robert Raville is constitutionally reasonable. Therefore, Defendants' Motion to Dismiss Plaintiffs' claims against Robert Raville for lack of personal jurisdiction is DENIED.

**2. Stephen Raville**

Plaintiffs also contend Stephen Raville purposefully availed himself to the jurisdiction of North Carolina by participating in negotiations and allegedly misrepresenting CitySwitch's intent to pay Plaintiffs. Plaintiffs allege Stephen Raville "assumed the primary role" in compensation negotiations after CitySwitch executed the Letter of Intent with AIM. (Doc. No. 26, p. 11). For months, Stephen Raville purportedly engaged in multiple phone calls and email exchanges with Bundy regarding potential compensation. Id. at 8, 12–13. For example, one email exchange appears to indicate Stephen Raville initiated the communication with Bundy and had previously called Bundy the prior day. (Doc. No. 26-3, pp. 2–4). Thus, Stephen Raville purposefully availed himself to the privilege of conducting business in North Carolina, satisfying the first part of the personal jurisdiction test.

Similar to Robert Raville, Plaintiffs' claims arise out of Stephen Raville's communications and his representations during negotiations regarding compensation for services Bundy provided to CitySwitch. (Doc. No. 26 pp. 12–15). Thus, Plaintiffs' claims arise out of Stephen Raville's contacts directed at North Carolina. Similar to the Court's ruling above and considering the multiple communications attempting to negotiate a compensation arrangement with Bundy, the exercise of personal jurisdiction is constitutionally reasonable here. Accordingly, Defendants' Motion to Dismiss Plaintiffs' claims against Stephen Raville for lack of personal jurisdiction is DENIED.

### 3. CitySwitch II & CitySwitch II-A

Plaintiffs allege "both CitySwitch entities are managed by the same leadership team, and principally, by Rob[ert] Raville and Stephen Raville" and that both entities have a "close corporate relationship . . . ." (Doc. No. 26, pp. 2–3). Defendants argue the two entities are separate, and

12

CitySwitch II-A was not fully formed until after any deal between CitySwitch II and AIM was completed. (Doc. No. 30-1, p. 2). Based on the allegations and record here, the Court will—for purposes of evaluating personal jurisdiction only—apply an "alter ego" theory of jurisdiction for both CitySwitch entities. See Hayward Indus., Inc. v. Ningbo C.F. Elec. Tech Co., No. 3:20-CV-00710, 2021 WL 2187953, at *6 (W.D.N.C. May 28, 2021) ("While the plaintiff carries a heaving burden when attempting to pierce the corporate veil to establish personal jurisdiction, North Carolina courts recognize the equitable nature of alter ego theory; as a result, they do not focus on the presence or absence of a particular factor, but instead apply the doctrine flexibly to avoid injustice. Notably, one important factor courts generally consider when evaluating jurisdiction under an alter ego theory is whether the defendants alleged to be alter egos share the same counsel." (citations omitted). As in Hayward, this Court is particularly persuaded by the fact that CitySwitch II-A has not submitted any corporate disclosure statements and shares the same counsel with CitySwitch II. The Court therefore considers whether City Switch II is subject to specific jurisdiction.

Plaintiffs' arguments regarding the Court's personal jurisdiction over CitySwitch II hinge on allegations that the Ravilles acted with authority to bind CitySwitch II. (See Doc. No. 26, p. 3). The actions of an agent may be sufficient to subject a nonresident corporation to the jurisdiction of a forum. Oppenheimer v. Chesnut-Toupin, No. 1:17-CV-00284-MR, 2018 WL 4682347, at *3 (W.D.N.C. Sept. 28, 2018) (citations omitted). An agency relationship is one where the principal has "the right to control both the means and the details of the process by which the agent is to accomplish his task." See id. (quoting Wyatt v. Walt Disney World Co., 565 S.E.2d 705, 710 (N.C. Ct. App. 2002)) (citation omitted). To establish someone acted with apparent agency, "(1) a

13

plaintiff must show the alleged principal has represented or permitted it to be represented that the party dealing directly with the plaintiff is its agent, and (2) the plaintiff, in reliance on such representations, has dealt with the supposed agent." Thomas v. Freeway Foods, Inc., 406 F. Supp. 2d 610, 618 (M.D.N.C. 2005).

Here, Robert Raville is CitySwitch's President and CEO, and these uncontroverted allegations are sufficient to allege he was acting as CitySwitch's agent for purposes of a personal jurisdiction analysis. See May Apparel Grp., Inc. v. Ava Imp.-Exp., Inc., 902 F. Supp. 93, 97–98 (M.D.N.C. 1995) (noting CEO was agent of corporation).

Plaintiffs further allege Stephen Raville is a "'Director', 'Founder' and 'Investor' in CitySwitch," and he "acted with apparent authority to bind CitySwitch and led Bundy to believe that [he] was authorized to act on behalf of CitySwitch." (Doc. No. 26, p. 3). The phone call among Stephen Raville, Robert Raville (as CitySwitch's President and CEO), and Bundy discussing terms of engagement, as well as Stephen Raville's subsequent negotiations with Bundy, are sufficient to suggest CitySwitch at least permitted Stephen Raville to be represented as its agent. Hayhurst v. Keller Williams Realty, Inc., No. 1:19CV657, 2020 WL 4208046, at *7 (M.D.N.C. July 22, 2020) ("A manifestation by a principal 'may take many forms', such as . . . 'placing the agent in charge of a transaction or situation.'") (quoting Restatement (Third) Of Agency § 2.03 cmt. c (Am. L. Inst. 2006)). Plaintiffs also allege Bundy advised CitySwitch regarding the transaction with AIM "based upon discussions" with both of the Ravilles, which "suggested CitySwitch was amenable to Bundy's proposed terms of engagement and compensation." (Doc. No. 26, p. 1). Thus, Plaintiffs contend they relied on CitySwitch's representations and conversations with Stephen Raville. See Thomas, 406 F. Supp. 2d at 618.

14

Accordingly, the elements of apparent agency are met, and CitySwitch can be considered legally responsible for the acts of its apparent agent, Stephen Raville, for purposes of personal jurisdiction.

CitySwitch submitted itself to personal jurisdiction in North Carolina through the acts of the Ravilles because they acted with agency to bind CitySwitch. As discussed above, the Ravilles' alleged contacts with North Carolina occurred while they were acting with agency on behalf of CitySwitch. Therefore, CitySwitch purposefully availed themselves of personal jurisdiction in North Carolina. Oppenheimer, 2018 WL 4682347, at *3. Furthermore, Plaintiffs claims arise out of CitySwitch's contacts with North Carolina. Lastly, CitySwitch's conduct and connection with North Carolina are such that it should have reasonably anticipated being hailed into court in this state and "North Carolina has a 'manifest interest' in providing the plaintiff 'a convenient forum for redressing injuries inflicted by' defendant, an out-of-state merchant." Bauer v. Douglas Aquatics, Inc., 698 S.E.2d 757, 767 (N.C. Ct. App. 2010) (quoting Baker v. Lanier Marine Liquidators, Inc., 654 S.E.2d 41, 45 (N.C. Ct. App. 2007)). Therefore, Defendants' Motion to Dismiss Plaintiffs' claims against CitySwitch for lack of personal jurisdiction is DENIED.

### B. Failure to State a Claim

In their Amended Complaint, Plaintiffs assert claims of unjust enrichment, fraud, negligent misrepresentation, and unfair and deceptive trade practices against all Defendants. (Doc. No. 26). Defendants moved to dismiss all claims against them pursuant to FED. R. CIV. P. 12(b)(6). (Doc. No. 30). After reviewing the detailed allegations contained in the Amended Complaint, as well as the parties' arguments, the Court summarily denies that portions of Defendants' motion to dismiss for failure to state a claim. This ruling is without prejudice to Defendants' ability to reassert any arguments, if applicable, at summary judgment.

## IV. CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motion to Dismiss (Doc. No. 30) is DENIED.

IT IS FURTHER ORDERED that Defendants shall file their Answer to the Amended Complaint within fourteen (14) days of this Order. As soon as the Answer is filed, the parties shall promptly confer pursuant to Rule 26(f) and submit the appropriate Certification of Initial Attorneys' Conference from under the Local Rules and this Court's standing orders.

IT IS SO ORDERED.

Signed: September 10, 2021

Frank D. Whitney
United States District Judge